UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONA BAIRD,

                              Plaintiff,

            -against-

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

                              Defendant.

**MEMORANDUM OPINION
AND ORDER**

09 Civ. 7898 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

            In this action, Plaintiff Mona Baird alleges that Defendant Prudential

Insurance Company of America wrongfully terminated her employer-sponsored long

term disability ("LTD") benefits.

            Defendant now moves for summary judgment, arguing that "the

administrative record . . . fully supports Prudential's decision [to discontinue Plaintiff's

disability benefits] in that there is substantial evidence demonstrating that Plaintiff is

capable of performing the material and substantial duties of her occupation."  (Def. Br. 1)

Because nothing in the administrative record suggests that Defendant acted in an arbitrary

and capricious manner in deciding to terminate Plaintiff's LTD benefits, Defendant's

motion to dismiss will be GRANTED.

## BACKGROUND

Plaintiff is a participant in the Goldman, Sachs & Co. Class 1 Employees Long Term Disability Plan ("the Plan"), an ERISA-governed employee welfare benefit plan administered by Defendant.  The Plan provides that a participant is disabled and thus entitled to benefits "when Prudential determines that"

> [the participant is] unable to perform the **material and substantial duties** of [her] **regular occupation** due to [her] **sickness** or **injury**; [the participant is] under the **regular care** of a **doctor**; and [the participant has] a 20% or more loss in . . . **monthly earnings** due to that sickness or injury.

(Def. Rule 56.1 Stat. ¶ 1; Coppola Decl., Ex. 3 at D0800) (emphasis in original)[1]  The Plan goes on to provide that "**[m]aterial and substantial duties** means duties that:  are normally required for the performance of your regular occupation and cannot be reasonably omitted or modified"; that "**[r]egular occupation** means the occupation you are routinely performing when your disability begins"; and that "**[i]njury** means bodily injury that is the direct result of an accident, is not related to any cause other than the accident, and results in immediate disability."  (Id. ¶¶2, 3; Coppola Decl., Ex. 3 at D0800-801)(emphasis in original, punctuation altered)  The Plan requires that each claimant provide continuing proof of disability in order to receive ongoing benefits under the Plan.  (Def. Rule 56.1 Stat. ¶ 4)  The Plan further states that Prudential "as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to

---

[1]  To the extent that this Court relies on facts drawn from Defendant's Rule 56.1 statement, it has done so because Baird has not disputed those facts or has not done so with citations to admissible evidence.  Where Plaintiff disagrees with Defendant's characterization of the cited evidence, and has presented an evidentiary basis for doing so, the Court relies on Plaintiff's characterization of the evidence.  See Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion).

make factual findings, and to determine eligibility for benefits," and that "[t]he decision of the Claims Administrator shall not be overturned unless arbitrary and capricious."  (Id. ¶ 5)

Plaintiff worked at Goldman Sachs as a manager of equity sales.  (Id. ¶ 6) The parties disagree about the material duties of her position.  (See Def. Rule 56.1 Stat. ¶ 7; Pltf. Rule 56.1 Stat. ¶ 7)  Plaintiff's self-reported material duties included:  (1) "working at a computer all day for 10-12 hours per day from 6 a.m. to 6 p.m. five days a week," (2) "sitting for 10-12 hours a day doing computer work," and (3) "writing and typing frequently."  (Pltf. Rule 56.1 Stat. ¶ 7(a), (b), (e); Coppola Decl., Ex. 3 at D346, 351-52)  Plaintiff was also required to occasionally push or pull up to 20 pounds and frequently up to 10 pounds, use her upper body for reaching or handling, and to "perform frequent fingering."  (Def. Rule 56.1 Stat. ¶ 8)

On March 3, 2005, Plaintiff left work at Goldman because of bilateral carpal tunnel syndrome.  (Id. ¶ 9)  Plaintiff's average annual income from Goldman at that time was more than $1 million.  (Hannan Decl., Ex. 1 at D0027)  Plaintiff received disability benefits of $15,000 per month under the Plan from September 3, 2005 to April 1, 2008, when Prudential determined that she was able to perform the material and substantial duties of her own occupation as defined under the Plan.  (Id. ¶ 10; Coppola Decl., Ex. 3 at D0766)  Upon the termination of her benefits, Plaintiff filed first and second level appeals, both of which Defendant denied.  (Id. ¶ 11)

## I.    PLAINTIFF'S CONDITION AND INITIAL TREATMENT

Baird began developing numbness, tingling, and weakness in her right hand in 2004.  On July 16, 2004, she underwent right carpal tunnel release surgery. A second surgery was performed on March 3, 2005, after which Baird did not return to

work.  (Id. ¶¶ 13-14)  Dr. Weiland, her treating physician and orthopedic surgeon, examined Baird on July 20, 2005 and noted that her right hand was improving "slowly and steadily."  (Id. ¶¶ 15-16).  Plaintiff complained of left wrist pain, but an electromyogram ("EMG") – a nerve conduction study – performed in January 2005 revealed no abnormalities in her left wrist.  (Id. ¶ 17)

On September 7, 2005, Baird complained of continued pain in her wrists and told Dr. Weiland that she had "to make some life decisions with respect to her employment."  (Id. ¶ 18)  Dr. Weiland examined Plaintiff again on November 16, 2005, at which time improvement was noted.  (See id. ¶ 19-21; Pltf. Rule 56.1 Stat. ¶¶19-21) At a July 5, 2006 visit, Baird complained that her right wrist was still not "back to baseline," and Dr. Weiland explained that "it would take 'another several months' to get back to baseline."  (Def. Rule 56.1 Stat. ¶¶ 22-23)

Baird's next office visit was on December 7, 2007, when she reported "that her symptoms are the same as they were, however they have significantly improved from her pre-surgical level."  Baird stated that she suffered from "occasional pain in the region of her [right] hand that goes in to her palm with some residual numbness which is unchanged," and that she continued to experience pain in her left hand.  (Pltf. Rule 56.1 Stat. ¶¶ 25-26; see Coppola Decl., Ex. 3 at D148, 135)

Following her 2005 surgery, Baird received four months of physical therapy.  The physical therapist's initial evaluation form notes that long term goals for Baird include regaining functional use of her right hand and returning to work.  (Def. Rule 56.1 Stat. ¶¶ 28-29)  Baird last received physical therapy on June 21, 2005.  (Id. ¶ 30)

On January 24, 2008, neurologist Dr. Dexter Sun performed a nerve conduction study on Baird and reported "no neurophysiologic evidence of focal neuropathy on either side in the hand."  Dr. Sun noted that this was the "second EMG study excluding carpal tunnel syndrome or any other neurologic sign in the hand."  (Id. ¶¶ 31-32)  Dr. Sun recommended that Plaintiff have an MRI of her cervical spine.  (Id. ¶ 33)

The MRI was performed on April 29, 2008, and revealed minimal disc bulging and sponylosis but no disc herniation.  (Id. ¶ 33)  Plaintiff's new treating physician Dr. Edward Reich found that the MRI findings were insignificant.  On May 27, 2008, Dr. Reich referred Baird to Dr. Martin Posner, an orthopedic surgeon who specializes in hand surgery.  Dr. Reich explained to Dr. Posner that he suspected that Baird might suffer from pronator syndrome of the left arm, noting that she complained of paresthesias and numbness in her left hand.  (Id. ¶¶ 34-36; Hannan Decl., Ex. 1 at D0277)

In a June 11, 2008 "To Whom It May Concern" letter, Dr. Reich stated that Baird suffered from pain in her forearm and wrists when engaged in prolonged writing and typing, and that his examination of her revealed evidence of entrapment of the median nerve as it passed through the pronator muscles.  (Id. ¶¶ 38-40)  Dr. Reich explained that Dr. Posner believed that surgery would only provide temporary relief and that due to "weakness" and "pain," Plaintiff "could not perform the tasks of her previous profession."  (Id. ¶¶ 41-42; Hannan Decl., Ex. 1 at D0277)

Dr. Nahid Nainzadeh performed an EMG of Plaintiff's right upper extremity on February 24, 2009, and concluded that the test results were "highly suggestive of right ulnar nerve focal neuropathy at the elbow."  (Id. ¶¶ 43-44)  In a "To Whom It May Concern" letter dated May 1, 2009, Dr. Reich reported that he had

examined Baird on April 14, 2009, in connection with her complaints of pain, tingling and numbness in her right hand.  Dr. Reich stated that Baird has right ulnar nerve entrapment at the elbow but that surgery is not recommended, because the scar tissue formation Baird experienced after her carpal tunnel surgery suggests "a poor prognosis for ulnar nerve decompression." Because of Baird's tendency to develop scar tissue in response to surgery, ulnar nerve surgery might "result[] in more deficit and more disability than [Baird] is presently experiencing.  For this reason, [surgery] is not being seriously considered by the surgeon unless the disability becomes so severe."  (Id. ¶¶45-47; Hannan Decl., Ex. 1, D0099)

## II.  DEFENDANT'S REVIEW OF PLAINTIFF'S CLAIM

In connection with Baird's ongoing disability claim, Defendant arranged for an independent medical examination ("IME") of her on October 10, 2007.  The IME was conducted by Dr. Neal Hochwald, a board-certified hand surgeon.  (Id. ¶ 49)  Baird reported that she had not received medical treatment for the pain and tingling in her hands or arms for at least a year.  (Id. ¶ 52)

Dr. Hochwald found that Baird self-limited her range of motion due to subjective complaints of pain.  During the examination, Dr. Hochwald found that Baird was fully able to passively flex and extend her wrists and that her fingers flexed into her palm with no limitation of motion.  (Id. ¶¶ 53-55)  Dr. Hochwald did not detect any muscle atrophy in Baird's hands or wrists, and found that she was able to maintain muscle function in both abduction and adduction of her fingers.  (Id. ¶¶ 56-57)  He reported that Baird, "self limits her own use of the right hand with no objective findings of muscle wasting or significant loss of sensation that can be objectively defined."  (Id. ¶ 60)  Dr. Hochwald likewise found no evidence of regional pain syndrome or of

6

significant tendinitis, muscle atrophy, or swelling in Baird's hands or wrist.  (Id. ¶¶ 61-
62)  Dr. Hochwald concluded that Baird's work activities should be limited as follows:
limited lifting with the right hand to 20 pounds or less; no significant pressure directly on
her palm; and limited use of vibrational tools.  (Id. ¶¶ 63-64)  He concluded that Baird
could grip, grasp, and perform repetitive and fine motor skills with her hand, and that she
might benefit from pain management, because she has a tendency to magnify her
symptoms.  (Id. ¶¶ 65-66)

On September 9, 2008, Defendant referred Plaintiff's file to Dr. Steve
McIntire, an independent physician specializing in neurology, who reviewed the evidence
submitted by Plaintiff, her counsel, and her healthcare providers.  (Id. ¶¶ 67-68)  Dr.
McIntire contacted Baird's treating physician, Dr. Reich, who repeated his finding that
Baird was disabled with pronator syndrome and was not a candidate for surgery.  (Id. ¶
69)  Dr. McIntire found that Baird had a "mild degree of impairment" in her right hand
due to her surgeries and "mild residual weakness."  (Id. ¶ 70)  Like Dr. Hochwald, Dr.
McIntire concluded that Plaintiff was unable to use hand tools or vibratory tools and
should not lift or carry more than 20 pounds.  (Id. ¶ 71)  He found, however, that she
could engage in simple gripping and grasping functions and fine manipulation without
restriction, and that there was no evidence of adverse side effects caused by medication.
(Id. ¶ 72-73)

Dr. Richard Avioli, an independent physician specializing in orthopedic
surgery, also reviewed Plaintiff's file for Defendant and found that the medical evidence
did not demonstrate that Plaintiff's symptoms caused severe impairment.  Dr. Avioli
found only minor weakness in the left hand and no severe pain in either hand.  (Id. ¶¶ 75-

76)  Dr. Avioli reported that "[b]ased on the fact that the claimant has mild symptoms in both hands . . . reasonable restrictions and limitations . . . would include no push/pull, lift/carry greater than 20 pounds occasionally with either hand, but otherwise unlimited ability to grip, grasp, pinch or use a keyboard or phone."  (Hannan Decl., Ex. 1 at D0054-55)

On June 16, 2009, Dr. McIntire performed an addendum review and considered the February 2009 EMG test performed by Dr. Nahid Nainzadeh, which supported a diagnosis of ulnar neuropathy.  (Id. ¶ 81)  Dr. McIntire concluded that the EMG test did not warrant additional restrictions or limitations on Plaintiff's activity.  (Id. ¶ 82)  On June 24, 2009, Plaintiff's file was reviewed by Dr. Michael Weiss, the third independent reviewing physician retained by Defendant and a specialist in orthopedic surgery, who concluded that Baird did not suffer from any functional impairment and did not require activity restrictions or limitations.  (Id. ¶¶ 83-84)  Dr. Weiss noted that ulnar neuropathy would not cause impairment, and that the medical evidence did not suggest adverse side effects from medication Plaintiff was taking.  (Id. ¶¶ 85-87)

### III.   DEFENDANT'S TERMINATION DECISION

On March 10, 2008, Defendant notified Baird that she was no longer eligible for LTD benefits under the Plan, effective April 1, 2008.  (Id. ¶ 88)  Defendant's termination letter stated that Baird's medical records indicated that "you have no restrictions and/or limitations regarding repetitive motion of either your right or left hand. Therefore, we have determined that you have the physical capacity to perform the upper extremity requirements of your regular occupation."  (Hannon Decl., Ex. 1 at D0736)

On November 20, 2008, Defendant denied Baird's first appeal, based in part on the reports of Drs. Hochwald, McIntire, and Avioli.  (Def. Rule 56.1 Stat. ¶¶ 91-

92)  Defendant concluded that "the medical restrictions identified [in the medical reports] would not preclude [Baird] from performing the material and substantial duties of her regular occupation as it is normally performed."  (Hannon Decl., Ex. 1 at D0712)  On July 23, 2009, Defendant denied Baird's final appeal, reiterating that she retained the functional capacity to perform the material and substantial duties of her occupation.  (Id. at D0685, 692)  In the final appeal decision, Defendant reviewed all the medical evidence in Baird's file, including reports from each of the physicians mentioned above.  (See id. at D0685-692; Def. Rule 56.1 Stat. ¶ 95)

## DISCUSSION

Defendant argues that it is entitled to summary judgment because Baird has not demonstrated that its decision to terminate her LTD benefits was arbitrary and capricious.  Given the high level of deference afforded a claim administrator's decision to terminate benefits under an employee benefit plan in which the claim administrator has discretion to determine eligibility, and the lack of any evidence suggesting that a conflict of interest influenced Defendant's decision-making, Defendant's motion for summary judgment will be GRANTED.  Baird's arguments amount to nothing more than a disagreement about how Defendant should have evaluated the medical evidence.  Where a benefit plan grants the claim administrator discretion to determine eligibility, such arguments do not provide a basis for overturning a benefit determination.

## I.   LEGAL  STANDARDS

### A.   Summary Judgment

"It is appropriate to consider a challenge under ERISA to the denial of disability benefits as a summary judgment motion reviewing the administrative record." Suarato v. Building Services 32BJ Pension Fund, 554 F. Supp.2d 399, 414-15 (S.D.N.Y.

2008) (citing Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003)).

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Whether facts are material is a determination made by looking to substantive law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Whether "[a] dispute about a

genuine issue exists" depends on whether "the evidence is such that a reasonable jury

could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163

(2d Cir. 2008) (internal quotation marks omitted). Courts "resolve all ambiguities, and

credit all factual inferences that could rationally be drawn, in favor of the party opposing

summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

       "In moving for summary judgment against a party who will bear the

ultimate burden of proof at trial," as in the current case, "the movant may satisfy this

burden by pointing to an absence of evidence to support an essential element of the

nonmoving party's claim." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)

(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The non-movant "cannot

avoid summary judgment simply by asserting a 'metaphysical doubt as to the material

facts,'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)), and "may

not rely on mere conclusory allegations nor speculation, but instead must offer some hard

evidence showing that [his] version of the events is not wholly fanciful." Golden Pac.

Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of New

York, 132 F.3d 145, 149 (2d Cir. 1998)). In an ERISA case, the Court considers only the

evidence contained in the administrative record.  See Bergquist v. Aetna U.S. Healthcare,

289 F. Supp 2d 411, 410 (S.D.N.Y. 2003); Glavan v. Building Service 32V-J Health

Fund, No. 96 Civ. 4145 (SHS), 1997 WL 381789. at *2 (S.D.N.Y. July 10, 1997)

(quoting Vursanaj v. Building Serv. 32B-J Health & Pension Fund, No. 93 Civ. 6676,

1995 WL 590616, at *3 (S.D.N.Y. Oct. 4, 1995) ("In the context of a motion for

summary judgment, the court must review the Trustees' decision in light of the pleadings

and the record before the Trustees.")).

### B.    ERISA Standard of Review

"[A] denial of benefits challenged under [ERISA] must be reviewed under

a de novo standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the

plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  Where a

claim administrator has discretionary authority, courts "will not disturb the

administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" Hobson v.

Metropolitan Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009).  Here, the parties do not

dispute that the Plan at issue grants the administrator discretion to determine eligibility

and, thus, that the Court should review Defendant's benefit determination under an

arbitrary and capricious standard of review.[2]  (Pltf. Br. 11; Def. Br. 13)

Under this standard, the determination of the Plan administrator must be

upheld unless it is "without reason, unsupported by substantial evidence or erroneous as a

matter of law."  Kinstler v. First Reliance Standard Life Ins. Co., 181 F.2d 249 (2d Cir.

---

[2]  The Plan provides that Prudential "has the sole discretion to interpret the terms of the
Group Contract, to make factual findings, and to determine eligibility for benefits."
(Coppola Decl., Ex. 3 at D0827)

1999).  "'Substantial evidence' is 'such evidence that a reasonable mind must accept as adequate to support the conclusion reached by the [decision-maker and] requires more than a scintilla of evidence but less than a preponderance.'"  Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d Cir. 1995) (quoting Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992)).  "'Absent a showing of bad faith or arbitrariness, the court will not disturb [the administrator's] interpretations of [the] plan as long as they are consistent with the plan's terms and purpose.'"  Sansevera v. DuPont de Nemours & Co., 859 F. Supp. 106, 112 (S.D.N.Y. 1994) (quoting Seff v. NOITU Ins. Trust Fund, 781 F. Supp. 1037, 1040 (S.D.N.Y. 1992)).  Where both parties "offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control."  Pulvers v. First Unum Life Ins., Co., 210 F.3d 89, 92-93 (2d Cir. 2000).

Where, as here, a claim administrator both determines the validity of benefit claims and is responsible for paying out benefits, the administrator has a conflict of interest.  See Metropolitan Life Ins. v. Glenn, 554 U.S. 105 (2008).  Even where a conflict of interest exists on the part of the claim administrator and can be shown to have influenced the plan administrator's benefit determination, however, the standard of review remains the same.  As the Second Circuit has explained, "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but does not make de novo review appropriate.  This is true even where the plaintiff shows that the conflict of interest affected the choice of a

reasonable interpretation."  <u>McCauley v. First Unum Life Ins. Co.</u>, 551 F.3d 126, 133 (2d Cir. 2008).

## II.    PLAINTIFF IS NOT ENTITLED TO FURTHER DISCOVERY

Baird's primary argument in opposing summary judgment is that she requires discovery outside the administrative record to determine whether a conflict of interest affected Defendant's benefit determination.  (Pltf. Br. 12, 14)  Baird argues that Defendant's conflict of interest "weighs in favor of finding that at the very least a genuine issue of material fact exists as to whether Defendant's decisions amounted to an abuse of discretion."  (Pltf. Br. 12)  As discussed below, this argument has no merit.

In reviewing the decision of a claim administrator, this Court is limited to the administrative record.  Baird has not demonstrated that any exception to this rule applies, nor does she suggest that Defendant's conflict actually affected its benefit determination here.  Baird cannot avoid summary judgment through conclusory assertions that discovery <u>might</u> reveal some infirmity in Defendant's decision-making. Baird's application for discovery – which is entirely unsupported by citation to case law – will be denied, and the Defendant's motion for summary judgment will be decided on the basis of the administrative record.

### A.    Plaintiff's Declaration and Dr. Green's Letter
###      <u>Are Not Part of the Administrative Record</u>

As a preliminary matter, this Court will not consider Plaintiff's newly submitted declaration or the letter from Dr. Richard Green, the Chairman of the Department of Surgery of Lenox Hill Heart and Vascular Institute of New York.  "[T]he presumption is that judicial review 'is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence.'

As the Ninth Circuit has explained, 'trial de novo on new evidence would be inconsistent with reviewing the administrator's decision about whether to grant the benefit.'" <u>Muller</u>, 341 F.3d at 125 (internal citations and quotations omitted).  In some cases "where, as here, the plan administrator is not disinterested (i.e., [] was both the plan administrator and insurer), 'the decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause.'"  <u>Paese v. Hartford Life & Accident Ins. Co.</u>, 449 F.3d 435, 441 (2d Cir. 2006) (quoting <u>DeFelice v. Am. Int'l Life Assurance Co.</u>, 112 F.3d 61, 66 (2d Cir. 1997), cited in <u>Muller v. First Unum Life Ins. Co.</u>, 341 F.3d 119, 125 (2d Cir. 2003)).

In <u>Paese v. Hartford Life & Accident Ins. Co.</u>, the Second Circuit "found that good cause existed for the admission of [a post-administrative decision] report because it was highly probative and written by a disinterested party who had actually examined [the plaintiff], and because [the plaintiff] was not at fault for the report's initial absence from the record."  <u>Id.</u>  In contrast to the instant case, however, the standard of review in <u>Paese</u> was <u>de</u> <u>novo</u>.

Where a court's review is under an abuse of discretion standard rather than <u>de</u> <u>novo</u>, supplementing the record with post-administrative decision materials will not ordinarily make sense.  The question before the court, in this context, is whether the administrator's decision was arbitrary and capricious in light of the record before it.  The breadth and type of evidence a claim administrator with discretionary authority chose to request and consider is subject to review only for an abuse of discretion.

Even if the "good cause" standard applicable in the <u>de novo</u> context governed here, Plaintiff's declaration and Dr. Green's letter would still be inadmissible. Baird's declaration discusses evidence she raised or could have raised during the administrative process.  She was represented by counsel throughout that process, and she offers no excuse for failing to submit the information in her declaration to Defendant during its review of her LTD claim.  Similarly, with respect to Dr. Green's letter, Baird has shown no good cause for why she delayed in obtaining this additional medical opinion.  <u>See</u> <u>Muller</u>, 341 F.3d at 125 (holding that "the District Court did not abuse its discretion, as there was no 'good cause' to admit additional evidence" where "[t]he record indicates that First Unum gave Muller ample time to submit additional materials"). Under the deferential standard of review applicable here, this Court's responsibility is to determine whether Defendant had a rational basis – founded in the medical evidence – for terminating Baird's benefits, not to conduct its own <u>de novo</u> evaluation of the medical evidence.  Accordingly, neither Plaintiff's declaration nor Dr. Green's submission will be considered.

### B. <u>Additional Discovery Will Not be Permitted</u>

"[T]he decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence."  <u>Burgio v. Prudential Life Ins. Co. of Am.</u>, 253 F.R.D. 219, 229 (E.D.N.Y. 2008); <u>Ramsteck v. Aetna Life Ins. Co.</u>, No. 08 Civ. 0012 (JFB)(ETB), 2009 WL 1796999, at *8 n. 3 (E.D.N.Y. Jun. 24, 2009) ("[T]he standard for permitting discovery to supplement the administrative record in an ERISA case is far less stringent than the standard for actually considering that outside evidence when reviewing the decision of the Plan Administrator, under either the de novo or the 'arbitrary and capricious' standard.") (citation omitted).

15

"If discovery is allowed, the plaintiff can then apply to the district judge for a determination as to whether she will expand the record to include information that discovery yielded, the nature of which is not yet known."  Burgio, 253 F.R.D. at 229 (citation omitted).

The standard for authorizing discovery under the circumstances here is set forth in Yasinoski v. Connecticut General Life Ins. Co., No. 07 Civ. 2573 (RRM)(AKT), 2009 WL 3254929 (E.D.N.Y. Sept. 30, 2009):

> Where . . . evidence outside of the administrative record is sought at the discovery stage, the petitioner "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement."  As noted in an earlier decision, "[i]f a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle:  To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery."  "The good cause standard required to obtain evidence beyond the administrative record [through discovery] is therefore less stringent than when requesting that the court [ ] consider such evidence in its final determination."

Yasinoski, 2009 WL 3254929, at *5 (emphasis added) (quoting Rubino v. Aetna Life Ins., Co., No. 07 Civ. 377 (LDW)(AKT), 2009 WL 910747, at *4 (E.D.N.Y. March 31, 2009)).

In Burgio v. Prudential Life Insurance Company of America, 253 F.R.D. 219 (E.D.N.Y. 2008), the court found that "enough evidence [was] raised by Plaintiff of a potential conflict of interest to warrant limited discovery outside the administrative record" where the plaintiff had shown that plaintiff's "eligibility for LTD benefits was allegedly tied to his continued eligibility for other employee benefits such as life insurance."  Burgio, 253 F.R.D. at 231.  Similarly, in Samedy v. First Unum Life Insurance Company of America, No. 05 Civ. 1431 (CBA)(KAM), 2006 WL 624889, at

16

*2 (E.D.N.Y. Mar. 10, 2006), the court granted limited discovery where plaintiff had submitted a declaration from a former Unum employee – responsible for making eligibility determinations – stating that she had been pressured to deny claims.

      As in Yasinoski, "the instant case [] is not analogous to [cases permitting discovery,]" because Plaintiff has cited nothing in the administrative record (or for that matter, outside the administrative record) suggesting that Defendant's conflict influenced the termination decision.  See Yasinoski, 2009 WL 3254929, at *11.  "[I]t is well-established that a conflict of interest does not per se constitute 'good cause'" for discovery of evidence outside of the administrative record, and while a full "good cause" showing is not required to obtain discovery, "a party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest." Rubino, 2009 WL 910747, at *3 (citing Lochner, 389 F.3d at 295).

      Here, Baird argues that discovery is necessary to reveal whether Defendant's reviewing physicians were "actually independent of the Defendant," and whether "Defendant has walled off claims administration from those interested in firm finances or has imposed management checks that penalize inaccurate decision-making, irrespective of who the inaccuracy benefits."  (Pltf. Br. 12, 14)  Plaintiff's suggestion that discovery might demonstrate that Defendant's conflict of interest influenced its decision-making to a degree that would affect this Court's review of Defendant's termination decision, however, is insufficient to demonstrate that there is a "'reasonable chance that the requested discovery will satisfy the good cause requirement.'"  Yasinoski, 2009 WL 3254929, at *5 (quoting Rubino, 2009 WL 910747, at *4 (denying motion to depose an employee of the defendant involved in the decision to reduce the plaintiff's monthly LTD

benefits, because the plaintiff's assertion "that there exists a 'structural conflict of interest because Aetna is both the claim insurer and claim administrator' falls far short of satisfying the standard necessary" to allow discovery); Schalit v. Cigna Life Ins. Co. of N. Y., 07 Civ. 476 (CM)(RLE), 2007 WL 2040587, at *3 (S.D.N.Y. Jul.12, 2007) (denying motion for general discovery outside the administrative record where plaintiff had not provided any specific factual allegations, but permitting limited discovery as to whether the administrative record was complete).

Finally, and as discussed below, the administrative record contains ample evidence in support of Defendant's determination that Plaintiff was able, under the Plan's terms, to resume the "material and substantial duties" of her "regular occupation." Accordingly, even if evidence exists that Defendant's decision-making process was tainted by conflict, it would likely have no effect on this Court's determination that Defendant's decision to terminate Plaintiff's LTD benefits was not arbitrary and capricious.[3]

---

[3] Defendant also notes that Plaintiff should have filed a Rule 56(f) motion if she required discovery to respond to its motion for summary judgment. (Def. Br. 7) See Fed. R. Civ. P. 56 (f). Plaintiff's counsel neither filed a Rule 56(f) motion nor requested discovery.

"Fed.R.Civ.P. 56(f) sets forth a specific procedure by which a party lacking information necessary to oppose a summary judgment motion may seek further discovery." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404, F.3d 566, 574 (2d Cir. 2005). Rule 56(f) provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) deny the motion;
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3) issue any other just order.

## III.    DEFENDANT'S TERMINATION DECISION
## <u>WAS NOT ARBITRARY AND CAPRICIOUS</u>

As claimant, Baird bears the burden of demonstrating that she qualifies for

LTD benefits.[4]  In order to establish that she is physically disabled under the Plan, Baird

must show that she is "unable to perform the material and substantial duties of [her]

regular occupation." (Coppola Decl. Ex. 3 at D0800)  <u>See</u> <u>Gannon v. Aetna Life Ins. Co.</u>,

No. 05 Civ. 2160(JGK), 2007 WL 2844869, at *11 (S.D.N.Y. Sept. 28, 2007) (citing

<u>Juliano v. Health Maintenance Org. of New Jersey</u>, 221 F.3d 279, 287-88 (2d Cir. 2000)).

In concluding that Baird was not physically disabled within the meaning

of the Plan, Defendant considered all medical evidence submitted by Plaintiff in favor of

her claim.  Defendant's November 20, 2008 letter denying Plaintiff's first appeal, for

example, recites an extensive list of medical records that Defendant considered, including

notes and evaluations from Drs. Reich, Sun, Weiland, Hochwald, Lenzo, Lee, Katchis,

and Posner; an EMG study; a Radiographic study; laboratory studies; sports and physical

therapy notes; surveillance reports; and investigative reports, as well as various other test

---

<u>Id.</u> at 606.  "To oppose a motion [for summary judgment] on the basis of Rule 56(f), a
party must file an affidavit detailing:  (1) what facts are sought and how they are to be
obtained; (2) how these facts are reasonably expected to create a genuine issue of
material fact; (3) what efforts the affiant has made to obtain those facts; and (4) why
these efforts were unsuccessful." <u>Id.</u>  Here, Plaintiff made no such submission.

[4]  The fact that Baird received LTD benefits for a period of time does not create a
presumption that she has a continued right to benefits.  <u>See</u> <u>Fitzpatrick v. Bayer Corp.</u>,
No. 04 Civ. 5134 (RJS), 2008 U.S. Dist. LEXIS 3532, 2008 WL 169318, at *9 (past
payment of benefits does not lessen plaintiff's burden in challenging termination
decision); <u>Lee v. Aetna Life and Cas. Ins. Co.</u>, No. 05 Civ. 2960 (PAC), 2007 U.S. Dist.
LEXIS 38205, 2007 WL 1541009, at *4 (S.D.N.Y. May 24, 2007) ("[The administrator]
is not required to disprove the possibility that [plaintiff] was disabled in order to
terminate her benefits; rather, it is [plaintiff's] burden to demonstrate her disability under
the Plan.").

results and doctors' reports and notes.  (See Hannan Decl., Ex. 1 at D0705, 708)  Nothing

in the record suggests that this evidence was not actually considered.

        Moreover, Defendant arranged for an IME of Plaintiff and review of her

medical records by three additional independent physicians.  All four physicians

concluded that Baird was able to perform the "material and substantial duties" of her

occupation.  That these physicians disagreed with Dr. Reich's assessment and Plaintiff's

own accounts of her disabled status does not indicate that Defendant's review of

Plaintiff's claim was flawed.

        While "ERISA and the Secretary of Labor's regulations under the Act

require 'full and fair' assessment of claims and clear communication to the claimant of

the 'specific reasons' for benefit denials, [] these measures do not command plan

administrators to credit the opinions of treating physicians over other evidence relevant to

the claimant's medical condition."  Black & Decker Disability Plan v. Nord, 538 U.S.

822, 825 (2003) (citations omitted).  "Therefore, when faced with a conflict between the

opinion of the treating physician and the opinions of reviewing doctors and independent

consultants, it is not arbitrary and capricious for the plan to prefer the reviewing doctors."

Greenberg v. Unum Life Ins. Co., No. 03 Civ.1396 (CPS), 2006 WL 842395, at *10

(E.D.N.Y. March 27, 2006) (citing Maniatty v. Unumprovident Corp., 218 F. Supp. 2d

500, 504 (S.D.N.Y. 2002)).  Similarly, "[a]n insurance company must be allowed to

employ a system which will prevent awarding benefits to those whose symptoms are

exaggerated or faked.  As such, it is reasonable for the company to prefer objective

verifiable evidence over the self-reported symptoms of the insured."  Id. (citing Maniatty,

218 F. Supp. 2d at 504 (holding that the administrator's decisions were not arbitrary and

capricious because "they demand[ed] objective evidence" and refused to rely solely on "subjective statement[s] of pain")).

Plaintiff has not demonstrated that Defendant's reliance on the opinion of reviewing doctors Hochwald, Avioli, Weiss, and McIntire was unreasonable or irrational. Accordingly, after reviewing the administrative record, this Court finds that Defendant's termination decision was supported by substantial evidence and was not arbitrary and capricious.

## IV.   THERE IS NO EVIDENCE THAT DEFENDANT'S CONFLICT OF INTEREST INFLUENCED ITS TERMINATION DECISION

Plaintiff argues that Defendant's conflict of interest may have influenced the termination decision.  (Pltf. Br. 12)  Where, as here, the claim administrator has a conflict of interest, the reviewing court must consider the conflict as a factor in assessing whether Defendant abused its discretion.  See Firestone Tire & Rubber, 489 U.S. at 115 ("if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion").

Here, Baird has not raised a material issue of fact as to whether Defendant's termination decision was influenced by its conflict of interest.  Instead, Baird makes conclusory statements, such as the assertion that the effect of the conflict of interest is apparent from Defendant's reliance on its own reviewing physicians' opinions. As discussed above, Defendant's reliance on the four opinions of its reviewing physicians constitutes a rational choice that Defendant was entitled, in its discretion, to make.

A "conflict of interest . . . should prove more important (perhaps of great importance) where circumstance suggest a higher likelihood that it affected the benefits decision, [such as where] an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken steps to reduce potential bias and to promote accuracy." Glenn, 554 U.S. 105, 128 S.Ct. at 2352.  Nothing before this Court suggests that Defendant has a history of biased claims administration.

Plaintiff relies heavily on Smith v. Novelis, 2009 U.S. Dist. LEXIS 90094 (GTS) (GJD), at **42-43 (N.D.N.Y Sept. 29, 2009), in arguing that the administrative record reveals procedural irregularities and possible structural conflicts that suggest biased decision-making.  The background facts in Smith, however, are distinguishable. In Smith, plaintiff had been "deemed 'totally disabled'" for fifteen years "based on objective and subjective medical evidence, and . . . there ha[d] been no change in [his] condition."  There had likewise been "no change in the relevant plan."  Nonetheless, the administrator "sua sponte re-open[ed] Plaintiff's file [to] consider terminating his benefits based on the exact same evidence and standard as before."  Under these circumstances, the court found that the approach adopted by the claim administrator "smacks of arbitrary conduct."  Smith, 2009 U.S. Dist. LEXIS 90094, at **42-43.  The facts here, however, are entirely different.

Baird has not been "deemed totally disabled" for fifteen years, nor did her condition remain static during the thirty months that she received LTD benefits.  Instead, undisputed evidence in Baird's medical records indicates that her condition improved over time.  Indeed, while she was diagnosed with carpal tunnel syndrome in 2004, by

2008, two EMG studies had found "no neurophysiologic evidence of focal neuropathy on either side in the hand" and no evidence of carpal tunnel syndrome. (Def. Rule 56.1 Stat. ¶¶¶ 31-32) While Baird asserts that she developed other ailments that prevented her return to work, four physicians retained by Defendant concluded that Baird suffered from no disabling impairment. In sum, in contrast to the circumstances in <u>Smith</u>, nothing about Defendant's approach here "smacks of arbitrary conduct" or otherwise suggests that Defendant's termination decision was influenced by conflict of interest.

*   *   *   *

"Given that only a rational connection is necessary between the facts relied upon and the decision to deny benefits," <u>Glavan</u>, 1997 WL 381789, at *3, this Court cannot find that Defendant's termination of Baird's LTD Plan benefits was arbitrary and capricious. In light of the deferential standard of review, Plaintiff's burden to demonstrate her physical disability under the Plan, and Defendant's citation to substantial evidence supporting its determination, there is no basis for this Court to overturn Defendant's benefit decision.

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment (Docket No. 13) is GRANTED. The Clerk of the Court is directed to terminate the motion and to close this case. Any other pending motions are moot.

Dated: New York, New York      SO ORDERED.
      September 23, 2010

Paul G. Gardephe
United States District Judge